Matter of Sposato (2026 NY Slip Op 00783)

Matter of Sposato

2026 NY Slip Op 00783

Decided on February 11, 2026

Appellate Division, Second Department

Per Curiam.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on February 11, 2026
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

HECTOR D. LASALLE, P.J.
MARK C. DILLON
COLLEEN D. DUFFY
BETSY BARROS
CHERYL E. CHAMBERS, JJ.

2023-11591

[*1]In the Matter of Christopher D. Sposato, admitted as Christopher David Sposato, a suspended attorney. Grievance Committee for the Tenth Judicial District, petitioner; Christopher D. Sposato, respondent. (Attorney Registration No. 1976992)

DISCIPLINARY PROCEEDING instituted by the Grievance Committee for the Tenth Judicial District. The respondent was admitted to the Bar at a term of the Appellate Division of the Supreme Court in the First Judicial Department on March 25, 1985, under the name Christopher David Sposato. By order dated November 20, 2013, the respondent was suspended from the practice of law for failing to file his biennial attorney registration statement and pay his biennial attorney registration fees for one or more registration periods (see Matter of Attorneys in Violation of Judiciary Law § 468-a, NYLJ, Nov. 20, 2013 [1st Dept 2013]).

Catherine A. Sheridan, Hauppauge, NY (Ann Marie Modica-Schaffer of counsel), for petitioner.
Guiliano McDonnell & Perrone, LLP, Mineola, NY (William M. Fennell of counsel), for respondent.

PER CURIAM.

OPINION & ORDER
The Grievance Committee for the Tenth Judicial
District commenced a formal disciplinary proceeding pursuant to 22 NYCRR 1240.8 against the respondent by serving and filing a notice of petition and a verified petition, both dated November 21, 2023. The respondent served and filed a verified answer dated January 25, 2024. By decision and order on application dated April 4, 2024, this Court, pursuant to 22 NYCRR 1240.8(b)(1), referred the matter to the Honorable Abraham G. Gerges, as Special Referee, to hear and report. In a report dated November 20, 2024, the Special Referee sustained all three charges in the petition. By notice of motion dated December 27, 2024, the Grievance Committee moves to confirm the report of the Special Referee and impose such discipline upon the respondent as this Court deems just and proper. In response, the respondent, through counsel, submits a memorandum of law which does not oppose the Special Referee's findings but offers arguments in mitigation and requests the imposition of a sanction no greater than a suspension already served or a public censure. The respondent's memorandum of law includes, inter alia, an exhibit which consists of a personal affirmation by the respondent.The Petition
The petition contains three charges of misconduct relating to the respondent's unauthorized practice of law while under suspension. By order dated November 20, 2013, the Appellate Division, First Judicial Department, suspended the respondent from the practice of law [*2]due to his failure to comply with biennial registration requirements, pursuant to Judiciary Law 468-a (see Matter of Attorneys in Violation of Judiciary Law § 468-a, NYLJ, Nov. 20, 2013 [1st Dept 2013]) (hereinafter the suspension order). The suspension order provided, inter alia, that the respondent was to
"refrain and desist from the practice of law in any form, either as principal or agent, clerk or employee of another, and is forbidden to appear as an attorney and counselor-at-law before any court, judge, justice, board, commission or other public authority, and is forbidden to give to another an opinion as to the law or its application, or any advice in relation thereto."
To date, the respondent remains suspended. All three charges in the petition are based upon the factual allegations below. Charge one outlines two separate instances wherein the respondent is alleged to have engaged in the unauthorized practice of law.
D'Angelo Matter
On December 16, 2022, the respondent entered into an "Engagement and Retainer Agreement" (hereinafter the retainer agreement) with Frank D'Angelo and D'Angelo Brands. The retainer agreement stated that it was for legal advisory and consulting services in connection with the following legal actions:
"(i) filed by Frank D'Angelo and 2156775 Ontario Inc. (collectively the 'D'Angelo Parties') against Arizona Beverages of Canada, ULC, Arizona Beverages USA, LLC, and Dominick Vultaggio, and others (collectively the 'Arizona Beverages Parties'), in Ontario Superior Court of Justice, and
"(ii) by certain of the Arizona Parties against the D'Angelo Parties in the Supreme Court of the State of New York, County of Nassau; and such other Matters as may be requested."
The retainer outlined the agreement between D'Angelo Brands and The Law Offices of Christopher D. Sposato. The respondent was paid $5,000 for his services.
On December 19, 2022, the respondent sent a letter to attorney Elbert F. Nasis (hereinafter the December 19, 2022 letter). Nasis's law firm represented Arizona Beverages in the following matter: Arizona Beverages USA, LLC and Arizona Beverages Canada, ULC, v 2156775 Ontario Inc., d/a D'Angelo Brands and Frank D'Angelo, which was filed in Supreme Court, Nassau County, Index No. 613104/22 (hereinafter the Nassau County action). The December 19, 2022 letter stated, among other things,
"The undersigned has just been retained to advise and represent 2156775 Ontario Inc., d/a D'Angelo Brands and Frank D'Angelo in connection with the reference matter. As you are aware, the Defendants are a Canadian corporation and citizen, respectively.
"Our firm will need a reasonable period of time to properly review both the pleadings your firm has filed against the Defendants and the relevant file materials regarding the Plaintiff's transactions with Defendants and the associated claims.
"In addition, I have been informed that there was a comprehensive subsequent agreement made by the Parties in January of this year that has modified and amended the initial agreements and understandings of the Parties inter se from those that are described and referenced in your Court filings. I request that you provide me with a verified copy of that document as soon as possible for review as it was not included as an Exhibit with your Court filings."
The respondent signed the December 19, 2022 letter "Christopher D. Sposato, Attorney-at-Law." The December 19, 2022 letter was on the respondent's law firm letterhead and listed a New York address, as follows: "The Law Offices of Christopher D. Sposato,* Integrity-Resources Attorney-at-Law, Victorian Gardens, 64 Cassa Loop, Holtsville, New York 11742 U.S.A." The asterisk referred to wording on the letterhead that states "Christopher D. Sposato is Licensed to Practice Law in the State of Connecticut—Juris Number: 304017."
On December 26, 2022, the respondent sent Nasis a second letter in reference to the following: "Revised Agreement and Payment Arrangements for Receivables among (i) [Arizona Beverages] as creditors, and (ii) [D'Angelo Brands], as payor and guarantor, respectively" (hereinafter the December 26, 2022 letter). The December 26, 2022 letter stated, inter alia:
"The pleadings you made in the Supreme Court of the State of New York, County of Nassau, with respect to the action by Arizona Beverages against D'Angelo Brands, Index No. 613104/2022, do not include the above facts, nor do they reference and attach as Exhibits the relevant correspondence and documents. These are serious omissions that result in important mis-representations of the facts and circumstances of your case to the Court.
"In addition, your pleadings fail and neglect to set out that Arizona Beverages wrongfully 'reversed' commissions due to D'Angelo Brands that were earned from the sales of Arizona Beverages' product to D'Angelo Brands' clientele; which clientele D'Angelo Brands built over twenty-three years through a trusting relationship by providing them with D'Angelo Brands' offering. It was through and because of these relationships that D'Angelo Brands was able to successfully convince and entice its customers and clients to purchase Arizona Beverages' products. . . .
"In my letter to you dated 19 December 2022 I requested information from you as to the 'comprehensive subsequent agreement made by the Parties in January of this year that has modified and amended the initial agreements and understandings of the Parties inter se from those that are described and referenced in your Court filing'; and I have requested that you provide me with a verified copy of that document as soon as possible for review as it was not included in your pleadings. To date, I have not had a response to my letter and this specific request.
"At this point, my Clients strongly suggest you and your Clients arrange through you and me to set up a meeting in Toronto in January to resolve the issues related to both your [lawsuit] that does not properly disclose or reflect the Agreed Modified Arrangements, and my Clients' lawsuit against your Clients in Ontario.
"We await your informed response to conclude this matter appropriately and amicably."
The respondent signed the December 26, 2022 letter, "Christopher D. Sposato, Attorney-at-Law." The December 26, 2022 letter was on the same law firm letterhead and had the same New York address as the December 19, 2022 letter.
By letter dated December 28, 2022, Nasis notified the respondent that he was aware of the respondent's suspension from the practice of law and advised the respondent that he would notify the disciplinary authorities if the respondent did not provide documentation confirming that he was "currently an attorney in good standing in the State of New York."
On December 31, 2022, the respondent sent Nasis a third letter in regard to the following: "Revised Agreement and Payment Arrangements for Receivables among (i) [Arizona Beverages] as creditors, and (ii) [D'Angelo Brands] as payor and guarantor, respectively" (hereinafter the December 31, 2022 letter). The December 31, 2022 letter stated, among other things:
"This firm, in our capacity as advisory commercial counsel to D'Angelo Brands, has sent you two prior letters addressing the referenced matter (i) describing how the factual situation your firm is describing and alleging on behalf of Arizona Beverages is incorrect, and (ii) requesting information and documentation from you and your clients regarding the revised payment arrangements that were agreed to by our respective clients that would have facilitated repayment to Arizona Beverages of amounts due to them from D'Angelo Brands, and enabled the necessary capital improvements to be completed to put D'Angelo Brands in the position to maintain and increase its production capacity for Arizona Beverages' products.
"To be clear, D'Angelo Brands strongly disputes your and your clients' assertions of the circumstances in this matter. D'Angelo Brands has provided you with information (which is also in the files of your clients and which you should have reviewed) with respect to the mutually agreed Revised Agreement and Payment Arrangements for the amounts due to Arizona Beverages; this evidences that your representation of the factual situation, and your client's Verification of same in the pleadings, is inaccurate and wrongfully misleading.
"We have requested you to review the facts and circumstances and respond to us with the information and documents you and your clients possess to facilitate a proper and complete [*3]discussion of the matters in order to conclude an appropriate resolution of the issues for both Arizona Beverages and D'Angelo Brands. Despite our requests, you have not responded nor provided the requested documentation and information.
"We await your prompt response to conclude this matter appropriately."
The respondent signed the December 31, 2022 letter, "Christopher D. Sposato, Attorney-at-Law." The December 31, 2022 letter was on the same law firm letterhead and had the same New York address as the December 19, 2022 letter and the December 26, 2022 letter. The December 31, 2022 letter did not respond to Nasis's inquiry regarding the respondent's law license status in New York.
Brent's Home Improvement Matter
In 2017, the respondent was retained by Brent's Home Improvements (hereinafter BHI) to provide assistance, counsel, and guidance in the collection of unpaid bills from BHI's client in Westchester County. As part of the representation, the respondent assisted BHI in drafting a notice of a mechanic's lien to be filed in Westchester County. The respondent also communicated with opposing counsel in an effort to facilitate a settlement between the parties. The respondent was paid for his services.
Based on the foregoing allegations, the respondent was charged with engaging in the authorized practice of law (charge one), engaging in conduct prejudicial to the administration of justice (charge two), and engaging in conduct adversely reflecting on his fitness as a lawyer (charge three) in violation of rules 5.5 and 8.4(d) and (h) of the Rules of Professional Conduct (22 NYCRR 1200.0).The Hearing Record
A hearing was held on September 10, 2024, and September 12, 2024. The Grievance Committee presented one witness and entered 14 exhibits into evidence to prove its case in chief. The respondent submitted two exhibits, testified on his own behalf, and called three witnesses to testify on his behalf. The referee also admitted one exhibit as court exhibit 1, which was a stipulation between the parties to amend a typographical error in the petition.
The Grievance Committee called Nasis, who testified consistently to the facts stated in charge one of the petition.
On January 4, 2023, Nasis filed a complaint against the respondent with the Grievance Committee. Nasis also sent a copy of the complaint to the Honorable Sharon M.J. Gianelli in Supreme Court, Nassau County, as well as a copy to the respondent. Nasis did not hear from the respondent after the complaint was filed. Nasis did not recall the respondent filing a notice of appearance and ultimately a default judgment was entered against the defendants in the Nassau County action.
The respondent testified and provided his personal background, including that he was admitted to practice in New York in 1984 and in Connecticut in 1985. In 1995, the respondent left the United States and moved to Bermuda to start a reinsurance company. While the respondent was living abroad, his law license was suspended for nonpayment of registration fees in both New York and Connecticut. The respondent otherwise had no prior disciplinary history.
The respondent said that he returned to the United States in or about 2015. He inquired about reinstating his law license in both Connecticut and New York. However, the respondent determined that he only could afford to pay his attorney registration fees in Connecticut, which were about $700, whereas he owed approximately $2,500 in New York. In addition, the respondent explained that New York has a two-step process and that he would have to pay his outstanding attorney registration fees and also have someone make a motion for his reinstatement. The respondent decided to pursue reinstatement only in Connecticut, where he was reinstated to practice law in late 2015.
After his reinstatement in Connecticut, the respondent started a solo practice and joined a number of business network groups. It was through one of these groups that he was ultimately introduced to Fernando Aguilar. Aguilar lived in Connecticut and his company, BHI, was incorporated in Connecticut. At the time he was assisting Aguilar, the respondent was living in Stamford, Connecticut. The respondent testified that Aguilar was not proficient in English, that he had started his own construction firm, and that he had a collection matter against one of his customers who was not paying Aguilar for work he had performed. The respondent could not recall [*4]whether he had a written retainer agreement with Aguilar, but the respondent believed that he was retained as a Connecticut attorney and said that he was paid approximately $800. The respondent testified that he believed his representation of Aguilar was in Connecticut, although the home improvement work and the customer for whom it was performed were located in Westchester County.
The respondent testified that he informed Aguilar that the respondent was licensed to practice law in Connecticut only and they had a discussion regarding the parameters of the representation. The respondent stated that they discussed Aguilar's options for filing a lawsuit in Connecticut, undergoing mediation in Connecticut, or finding "New York counsel at some point and perhaps file a mechanic's lien." When it was decided that filing a mechanic's lien was Aguilar's best option, the respondent said that he knew "I could not provide legal services for that but I could assist perhaps with doing some general research and assisting in putting a document together." The respondent said that he did not finalize the notice of mechanic's lien, did not file it, and did not serve it. The respondent explained that he helped draft the notice of mechanic's lien "in a broad sense," that he reviewed some commercial websites with Aguilar, that he helped Aguilar with the appropriate wording, and that he helped Aguilar "polish up the document draft." The respondent testified that he believed that determining the location for filing a mechanic's lien did not require any legal training or providing a legal opinion on New York law as "there are dozens of websites that contractors can go to look at as references."
During the respondent's examination under oath (hereinafter EUO), he acknowledged that "on the periphery" he was advising Aguilar regarding New York law and instructing Aguilar where he needed to file the mechanic's lien. Further, the respondent acknowledged that although he testified that he provided counseling as to what Aguilar should consider when filing a mechanic's lien, that "I guess if you split hairs, it could be" considered advice on the application of New York law and the filing of a mechanic's lien.
After the mechanic's lien was filed in Westchester County, the homeowner against whom the mechanic's lien was asserted filed a lawsuit against Aguilar, BHI, and the respondent, personally (hereinafter the Westchester County action). The respondent stated that he had discussions, in his capacity as a defendant, with the homeowner's attorney to try to settle the claims asserted against him. During his EUO, the respondent testified that he attempted to promote settlement discussions for the entire matter with the plaintiff's attorney and participated in telephone calls with counsel to that end. The respondent filed an answer, but never appeared on behalf of Aguilar or his company in the Westchester County action.
In regards to the Nassau County action, the respondent stated that he received a call from a friend asking if the respondent would assist D'Angelo. D'Angelo resided in Toronto, Canada, and was the principal of D'Angelo Brands, a Canadian company. The respondent told his friend that the respondent was not licensed to practice law in New York, but his friend asked the respondent to speak with D'Angelo anyway. The respondent agreed. When the respondent spoke with D'Angelo, the respondent stated that he was not licensed in New York but that he was looking into the process of reinstating his license.
In December 2022, the respondent and D'Angelo entered into an engagement and retainer agreement for legal advisory and consulting services. The respondent received a fee of $5,000 for his services. The respondent stated that this retainer agreement did not involve the respondent appearing in court anywhere in the United States or Canada. However, the retainer agreement states that the respondent would provide legal advisory and consulting services for two pending legal actions, an action pending in Ontario Superior Court of Justice and the Nassau County action.
The respondent claimed that D'Angelo persuaded the respondent to contact Nasis regarding, inter alia, inaccurate and misleading statements in the pleadings filed in the Nassau County action. Further, the respondent stated that D'Angelo asked the respondent to facilitate settlement discussions between the parties. The respondent testified that he believed he was helping Nasis by communicating with him and pointing out the misleading and inaccurate statements in the pleadings "because if I were an attorney putting my verification and my affidavit on the line, I would want to make sure what I was saying was true and correct and I thought Mr. Nasis might appreciate that."
The respondent said that he believed that he could provide general business consultation advice without violating his suspension order. The respondent testified that the [*5]December 19, 2022 letter, the December 26, 2022 letter, and the December 31, 2022 letter, only "touch[ed] upon ordinary business practices, general advice, and trying to offer a commercial resolution or path towards resolution," and that the letters could have been signed by D'Angelo. The respondent believed he could serve as a representative to write the letters, "much as anyone else could do. His accountant could have done it. His real estate agent could have done it. It was a general consulting advisory engagement to try to do two things, advise Nasis of the revised agreements against which he was seeking summary judgment which were incorrect, and two, to invite an open dialogue between his companies and Arizona Beverages." The respondent believed that he did not provide any legal opinions regarding New York law in the letters to Nasis.
The respondent testified that after discussions with D'Angelo, as well as after reviewing the pleadings, contracts, agreements, and e-mails, the respondent concluded that certain misstatements may have been made by opposing counsel. During his testimony, the respondent reiterated that he did not believe that his conclusions concerning the pleadings constituted providing a legal opinion on New York law, analogizing, "I'm not a meteorologist either but I can look outside."
As to facilitating discussions between the parties, the respondent explained that the purpose of arranging the meeting was to seek a resolution to the litigations in Canada and New York. When asked if the goal was to settle the cases out of court, the respondent answered, "That's what the client expressed to me. I'm not a mind reader."
The respondent testified that the letterhead on which the letters to Nasis printed is not law firm letterhead but is "[a] small office and consulting. Integrity Resources is a consulting firm," even though the letterhead states "The Law Offices of Christopher D. Sposato." The respondent believed that as an attorney licensed in Connecticut, he was permitted to have discussions with parties adverse to his client, to review documents and pleadings related to litigation in both New York and Canada, and to request settlement discussions even if the attorneys representing the adverse parties are outside Connecticut.
The respondent called three witnesses to testify on his behalf: D'Angelo, Aguliar, and Samuel Delgado. Each witness testified to the respondent's good character. They each also offered information about how the respondent had helped them.The Special Referee's Report
The Special Referee sustained all three charges in the petition. The Special Referee found that the Grievance Committee's evidence, coupled with the respondent's statements, demonstrated that the respondent is guilty of the unauthorized practice of law. In mitigation, the Special Referee noted that the respondent informed his clients that he was not authorized to practice law in New York and that the respondent cooperated with the Grievance Committee's investigation.
The Grievance Committee now moves to confirm the report of the Special Referee and impose such discipline upon the respondent as this Court deems just and proper. The Grievance Committee submits that the respondent has shown no remorse or acceptance of responsibility for his flagrant violation of the order of suspension, which are aggravating factors for this Court's consideration in imposing discipline.
In response, the respondent, through counsel, submits a memorandum of law which does not oppose the Special Referee's findings and attaches as an exhibit a separate personal affirmation from the respondent stating that he now understands what constitutes the practice of law in New York, that he takes responsibility for his actions, and that he is remorseful. The respondent further avers that the sustained charges against him "did not entail dishonesty, there was no criminal conduct, and there was no venal intent." Given this mitigation, the respondent contends that this Court should impose the most lenient sanction available.
In reply, the Grievance Committee contends that the respondent's separate personal affirmation should not be considered by the Court as it was created after the closing of the record.Findings and Conclusion
In view of the evidence adduced at the hearing, including the respondent's own testimony, we find that the Special Referee properly sustained all three charges of misconduct in the petition. Accordingly, the Grievance Committee's motion to confirm the Special Referee's report is granted. In determining an appropriate measure of discipline, we have considered in mitigation, inter alia, the respondent's cooperation with the Grievance Committee's investigation and that his [*6]clients were aware of his suspension in New York. Notwithstanding the mitigation advanced, we find that the respondent's actions were a clear violation of the suspension order, and while the respondent attempted to characterize his actions as those of a consultant or an advisor, the record shows that the respondent violated a court order and engaged in the unauthorized practice of law, which constitute egregious misconduct.
Under the totality of the circumstances, we find that the respondent's conduct warrants a suspension from the practice of law for five years (see Matter of Nerenberg, 45 AD3d 116).
LASALLE, P.J., DILLON, DUFFY, BARROS and CHAMBERS, JJ., concur.
ORDERED that the Grievance Committee's motion to confirm the Special Referee's report is granted; and it is further,
ORDERED that the respondent, Christopher D. Sposato, admitted as Christopher David Sposato, is suspended from the practice of law for a period of five years, effective immediately, and continuing until further order of this Court. The respondent shall not apply for reinstatement earlier than August 9, 2030. In such application (see 22 NYCRR 1240.16), the respondent shall furnish satisfactory proof that during the period of suspension, he (1) refrained from practicing or attempting to practice law, (2) fully complied with this opinion and order and with the terms and provisions of the rules governing the conduct of disbarred or suspended attorneys (see id.
§ 1240.15), (3) complied with the applicable continuing legal education requirements of 22 NYCRR 691.11(a), and (4) otherwise properly conducted himself; and it is further,
ORDERED that the respondent, Christopher D. Sposato, admitted as Christopher David Sposato, shall comply with the rules governing the conduct of disbarred or suspended attorneys (see id. § 1240.15); and it is further,
ORDERED that pursuant to Judiciary Law § 90, the respondent, Christopher D. Sposato, admitted as Christopher David Sposato, shall continue to desist and refrain from (1) practicing law in any form, either as principal or as agent, clerk, or employee of another, (2) appearing as an attorney or counselor-at-law before any court, Judge, Justice, board, commission, or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding himself out in any way as an attorney and counselor-at-law; and it is further,
ORDERED that if the respondent, Christopher D. Sposato, admitted as Christopher David Sposato, has been issued a secure pass by the Office of Court Administration, it shall be returned forthwith to the issuing agency, and the respondent shall certify to the same in his affidavit of compliance pursuant to 22 NYCRR 1240.15(f).
ENTER:
Darrell M. Joseph
Clerk of the Court